# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Docket No. 34692** |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAMIRO R. NEVAREZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | **Docket No. 34902** |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | **2009 Opinion No. 31** |
| | ) | |
| MARCO ANTONIO JIMENEZ, | ) | **Filed: April 21, 2009** |
| | ) | |
| Defendant-Appellant. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. R. Barry Wood; Hon. John Melanson, District Judges.

Orders denying motions to employ an expert at public expense and to suppress evidence, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant Ramiro R. Nevarez. Jeffrey Brownson argued.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant Marco A. Jimenez. Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

---

LANSING, Chief Judge

In separate cases that were consolidated for oral argument on appeal, Nevarez and Jimenez entered conditional guilty pleas to robbery, reserving the right to appeal from the denial

1

of their respective motions for public funds to hire an expert witness and motions to suppress evidence.

# I.

# BACKGROUND

At about 1 a.m. on October 27, 2006, Deputy Joe Moore of the Minidoka County Sheriff's Department was patrolling when he heard a dispatch stating that a Rupert convenience store had just been robbed at gunpoint by two Hispanic individuals. Moore, located about eight miles away, started driving toward Rupert. On the way, he traveled through the town of Paul, at which time he decided to drive slowly and observe the occupants of vehicles traveling in the opposite direction because they could be coming from the area of the robbery. A car with four occupants, two of whom were the defendants, passed by him. According to Deputy Moore's subsequent testimony, the cars met in an area of the roadway that was illuminated by the lighting of an adjacent gas station. He saw in the vehicle four individuals, who appeared to be Hispanic, sitting in what he termed a "low-ride" position. Then in his side mirror as the vehicle continued past, he saw "quite a bit of reaction" from those individuals at seeing the police vehicle. He said the individuals showed looks of concern or exclamation. He also saw the individuals within the vehicle shifting or moving around, which he believed could indicate they were hiding items or reaching for a weapon. He then turned around to follow the vehicle and while following it observed additional movement within the car. Based upon his observations of the occupants, Moore followed for a few blocks before effectuating a stop. After stopping the car, he saw evidence in the vehicle that led to the arrest of all four men in connection with the Rupert robbery. Jimenez and Nevarez were charged with robbery of the convenience store by aiding and abetting. Idaho Code §§ 18-6501, 18-6502(2), 18-204.

Both defendants filed motions to suppress all evidence discovered as a result of the vehicle stop, contending that the stop was not supported by reasonable suspicion. At Jimenez's preliminary hearing, Moore had testified to his observations of the occupants of the vehicle when it approached and passed by him, and to viewing the defendants' vehicle in his side-view mirror after passing, while he was driving 35 miles per hour and the defendants' vehicle was traveling at 42 miles per hour in the opposite direction during the nighttime hours. Both defendants considered this testimony to be suspect and, both being indigent, filed motions for funds to hire an identified expert in visual observation in order to challenge the veracity of Moore's

2

anticipated testimony at the suppression hearing. That is, the defendants sought the expert to establish that Moore could not have seen what he claimed to have seen inside their vehicle. The district court denied the motion, reasoning that the lighting conditions and the time for observation established by the speed of the cars could be explained to and understood by the court as the fact-finder at the suppression hearing, and that expert testimony therefore would not be helpful to the finder of fact. Accordingly, the court concluded that the defendants had not shown that use of public funds was necessary to provide an adequate defense.

After a hearing at which Deputy Moore testified, the district court denied the defendants' suppression motions, concluding that the vehicle stop was supported by reasonable suspicion. Both defendants then entered conditional guilty pleas, reserving the right to appeal the denial of the two motions.

## II.

## ANALYSIS

### A.    Motion for Expert Witness Services

The defendants assert that the district court denied their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and their right to present evidence pursuant to the Sixth Amendment by declining to authorize the expenditure of public funds for an expert witness. The defendants maintain that such an expert was necessary to provide them a fair opportunity to challenge the veracity of Deputy Moore's testimony concerning what he was able to see inside their vehicle before he signaled the driver to stop. They contend that such an expert could evaluate whether the deputy could have seen what he claimed to see on a dark night with his patrol vehicle meeting and passing the defendants' vehicle.

The Constitution does not require that a state provide expert assistance merely because a criminal defendant requests it. *State v. Lovelace*, 140 Idaho 53, 65, 90 P.3d 278, 290 (2003); *State v. Olin*, 103 Idaho 391, 394, 648 P.2d 203, 206 (1982). Nevertheless,

> [W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

3

*Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). In *Ake*, the United States Supreme Court set forth three factors to be weighed in determining whether expert assistance requested by an indigent defendant constitutes a "basic tool of an adequate defense or appeal," and therefore must be afforded:

> The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

*Id.* at 77. *Ake* thus requires that the defendant make a threshold showing that the requested assistance would have probable value to address what will be a significant factor in the defense against the charge, such that the accuracy of the fact-finder's determination would be called into question if the assistance were denied. *Id.* at 77-83. *See also State v. Martin*, 146 Idaho 357, 363, 195 P.3d 716, 722 (Ct. App. 2008). As we recently stated, this standard "requires the provision of assistance at public expense where it is necessary for a fair trial and a meaningful opportunity to present a defense, while sifting out requests for services that are not shown to be reasonably necessary for these purposes." *Id.*

Applying these principles, we find no error in the district court's denial of the defendant's motion for the services of an expert. What can and cannot be observed in passing cars at night with lighting conditions as described by the deputy is well within the common experience of nonscientists, including judges who preside at suppression hearings. Without the aid of an expert, the defendants were free to present evidence concerning factors that would bear upon Deputy Moore's ability to perceive the things that he reported seeing, such as tinting on the windows of the involved vehicles and the extent to which light from the business illuminated the roadway. The defendants did not show that without testimony from an expert, the accuracy of the district court's fact findings on their suppression motion would be called into question.

Even if we assume that expert testimony could have cast doubt on the reliability of Deputy Moore's testimony about what he viewed in his side-view mirror after the vehicles passed each other, there was no prejudice to the defendants from the denial of expert services because, as shown below in Section B of this opinion, even when the deputy's reported observations in his side-view mirror are disregarded, there existed reasonable suspicion justifying his stop of the defendants' vehicle.

4

**B.     Motion to Suppress Evidence**

The defendants contend that the evidence acquired as a consequence of the stop should have been suppressed on the ground that the information possessed by Deputy Moore did not create reasonable suspicion of criminal activity. On reviewing the decision on a suppression motion, we defer to the trial court's findings of fact unless they are clearly erroneous, while exercising free review over the application of constitutional standards to those facts. *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998). Deference is also given to the trial court's decisions regarding the credibility of witnesses, the weight to be given to conflicting evidence and the factual inferences to be drawn. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995).

The Fourth Amendment to the United States Constitution prohibits government agents from conducting unreasonable searches and seizures. When a private vehicle is stopped by the police, all of its occupants are "seized" and may seek suppression of evidence if the seizure did not comply with Fourth Amendment standards. *Brendlin v. California*, 551 U.S. 249 (2007); *State v. Luna*, 126 Idaho 235, 880 P.2d 265 (Ct. App. 1994). To pass constitutional muster, a detention to investigate possible criminal activity must be based upon reasonable suspicion, derived from specific articulable facts, and the rational inferences that can be drawn from those facts, that the person stopped has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Bishop*, ___ Idaho ___, 203 P.3d 1203 (2009); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003); *State v. Salato*, 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct. App. 2001). The quantity and quality of information necessary to create reasonable suspicion for such a "*Terry* stop" is less than that necessary to establish probable cause, *Alabama v. White*, 496 U.S. 325, 330 (1990); *Bishop*, ___ Idaho at ___, 203 P.3d at ___, but must be more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27.

When a defendant challenges the validity of a vehicle stop, the burden is on the state to prove that the stop was justified. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *State v. Sevy*, 129 Idaho 613, 614-15, 930 P.2d 1358, 1359-60 (Ct. App. 1997). The reasonableness of a stop is determined by looking at the totality of the circumstances confronting the officer at the time of the stop. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Osborne*, 121 Idaho 520, 526, 826 P.2d 481, 487 (Ct. App. 1991). Due weight must be given to the reasonable inferences

that a law enforcement officer is entitled to draw from the facts in light of his experience. *Terry*, 392 U.S. at 27.

According to Deputy Moore's suppression hearing testimony, which was relied upon by the district court, the information known to him before the defendants were detained was as follows. At about 1 a.m. he had learned from dispatch that an armed robbery had just occurred at a store in Rupert. It was reported that the robbery was committed by two Hispanic individuals wearing hooded sweatshirts, stocking caps and bandannas. There was no description of any car used by the robbers, nor even information as to whether they had left the scene of the robbery in a vehicle. As Moore traveled toward the robbery site, he left his overhead emergency lights turned off so he could check on approaching vehicles without revealing that he was law enforcement. Before seeing the defendants' car, Moore had met three or four vehicles, but found none of them to be suspicious. At about the point to which a vehicle could have traveled from the time and place of the robbery, the deputy saw a car coming and activated his radar to check its speed. He learned that it was traveling 42 miles per hour in a 55 mile-per-hour zone. This drew the deputy's attention because, in his experience, most people drive at or slightly above the speed limit and tend to drive well under the speed limit only if they are elderly, intoxicated, or trying to avoid the attention of police. Moore testified that "some people believe [that driving far below the speed limit] doesn't draw an officer's observance, but it's just the opposite." The deputy slowed his own vehicle to 35 miles per hour so that he would meet the oncoming vehicle in the area illuminated by the lighting at a gas station. As the vehicle approached and went by him, Moore saw four individuals inside. He saw that they had bald heads and were riding low in the car so that mostly what he could see was their heads. He saw all individuals in the vehicle look at him as they went by, wearing "varying expressions" on their faces. Moore turned to follow the vehicle. As the vehicle approached a place where the highway separated from two lanes into four lanes, the driver signaled to move into the right lane. This signaling began about 200 feet before the highway split. Deputy Moore testified that both the early signaling and the act of signaling at all, though perfectly legal, were not usually done by most drivers, and this further aroused his suspicion that the driver was being abnormally cautious in order to avoid police contact. When he caught up with the vehicle, Moore said he observed the occupants "jumping around or moving around in [the] car really fast," indicating to Moore that "quite possibly there might be some reason for it, such as to remove clothing, hide weapons, secure

6

items they don't want to be found." Moore then activated his overhead lights to signal the vehicle to stop. He explained his reasons:

> The people inside the vehicle showed a keen interest in me as an officer; there was furtive movement inside the vehicle once they had seen it was a police officer's vehicle; appeared to be Hispanic individuals in there, the same as on the call; two Hispanics that came in the store; the report of bandannas used could--or to me might have been some type of gang-type thing. That's also in this area part of the culture of low riding.
>
> . . . .
>
> The fact that they were going so slow and signaling so early in an attempt to do everything above the law. By that I mean under the speed limit by, you know, several miles an hour; not just 54 or 52 or 50; exaggerated turn times or blinker times.
>
> . . . .
>
> They were within the window of possibility to have traveled from Rupert to that location.

We conclude that, collectively, the information available to the deputy, though certainly far from creating probable cause for an arrest, was sufficient to justify a brief detention of the vehicle's occupants to investigate whether they were involved in the reported robbery. The assessment of reasonable suspicion "must be based on common sense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Nervous, evasive behavior is a pertinent factor that may contribute to reasonable suspicion. *Id.* at 124. Here, the officer saw the car approaching from the direction of the robbed convenience store at about the time that it would have taken to drive from the robbery. The car was traveling well below the speed limit, which suggested to the officer from his experience that the driver could be attempting to avoid police contact. The occupants seemed to exhibit unusual interest in or concern about the patrol car as they went by. As Deputy Moore followed close behind the car, he saw activity suggesting that the occupants might be changing clothing or hiding items, and the driver appeared to be continuing to drive with excessive caution. The vehicle occupants, like the robbers, appeared to be Hispanic. The possibility of innocent explanations for the behavior of the driver and vehicle occupants does not preclude reasonable suspicion that they were involved in the robbery. As the United States Supreme Court observed in *Wardlow*:

> Even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. All of this conduct was by itself lawful, but it also suggested that the individuals were

casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity.

*Id.* at 125 (citations omitted). Deputy Moore's observations here were sufficient to create reasonable suspicion warranting a brief stop of the vehicle to investigate whether the occupants had committed the reported robbery.

Accordingly, we find no error in the denial of the defendants' suppression motion.

## III.

## CONCLUSION

The district court's orders denying the defendants' request for provision of expert assistance at public expense and denying their motions to suppress evidence are affirmed.

Judge PERRY and Judge GRATTON **CONCUR.**