IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 37921

| STATE OF IDAHO, | ) | |
| --- | --- | --- |
| | ) | 2011 Opinion No. 50 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: August 12, 2011 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| JACK C. KESSLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order denying motion to suppress evidence, __affirmed__.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jack C. Kessler appeals following his judgment of conviction for possession of methamphetamine. He challenges the district court's denial of his motion to suppress the drug evidence. Kessler asserts that there was no reasonable suspicion for his detention and no justification for the subsequent frisk that resulted in an officer's discovery of methamphetamine in Kessler's pocket. We affirm.

## I.

## BACKGROUND

Around 1:30 a.m. on a November night, police received a report that two or three people had been involved in breaking the window of a vehicle at an apartment complex. Several officers responded. One of them reported to the others that he had seen three men running in a direction leading away from the crime scene and had commanded them to stop. The officer said

he apprehended one of the men but the other two were still running. The only description of the men was that they were males in dark clothing.

The officers, including Boise police officer Sherri Kauffman, decided to set up a loose perimeter to try to apprehend the two remaining men. Toward that end, Officer Kauffman went to an area that was six to eight blocks from the location where the suspects had fled from the other officer. The first person she saw was Kessler, who was walking briskly down the street toward her. Kessler was wearing a dark jacket and dark jeans. When Kessler first saw Officer Kauffman, he stopped and then looked to the right, away from the street, causing the officer to believe that he might be planning to run. The officer exited her vehicle and ordered Kessler to lie down and place his hands behind his back. He complied. The officer then asked if Kessler had any weapons on his person, and he responded that there was a knife in his front pocket. When Officer Kauffman retrieved the knife, a packet of methamphetamine came out with it. Kessler was arrested and charged with possession of methamphetamine, Idaho Code § 37-2732(c).

Kessler filed a motion to suppress evidence of the drugs on grounds that Officer Kauffman had no reasonable suspicion to stop him and no justification for the frisk. The district court denied the motion. Kessler thereafter conditionally pleaded guilty, reserving the right to appeal the denial of his suppression motion.

## II.

## ANALYSIS

### A.     The Detention

Kessler contends that the methamphetamine acquired as a consequence of the stop should have been suppressed because the information possessed by the officer did not create reasonable suspicion that Kessler was involved in the recently reported car burglary. When reviewing the decision on a suppression motion, we defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998). Deference is given to the trial court's decisions regarding the credibility of witnesses, the weight to be given to conflicting evidence, and the factual inferences to be drawn. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995). We exercise free review, however, in determining whether, on the

facts found, constitutional standards were violated. *Henage*, 143 Idaho at 658, 152 P.3d at 19; *Hawkins*, 131 Idaho at 400, 958 P.2d at 26.

The Fourth Amendment to the United States Constitution prohibits government agents from conducting unreasonable searches and seizures. To satisfy this standard, the detention of an individual to investigate possible criminal activity must be based upon reasonable suspicion, derived from specific articulable facts and rational inferences drawn therefrom, that the person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003); *State v. Salato*, 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct. App. 2001). The quantity and quality of information necessary to create reasonable suspicion for such a detention is less than that necessary to establish probable cause, but must be more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27; *Alabama v. White*, 496 U.S. 325, 330 (1990); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. The reasonableness of a stop is determined by looking at the totality of the circumstances confronting the officer at the time. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Osborne*, 121 Idaho 520, 526, 826 P.2d 481, 487 (Ct. App. 1991). Due weight must be given to the reasonable inferences that a law enforcement officer is entitled to draw from the facts in light of his or her experience. *Terry*, 392 U.S. at 27. The assessment of reasonable suspicion "must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). It is the State's burden to prove that a stop was justified. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *State v. Sevy*, 129 Idaho 613, 614-15, 930 P.2d 1358, 1359-60 (Ct. App. 1997).

Here, it is undisputed that the officer was aware that a crime, a car break-in, had just occurred and that at least two of the suspected perpetrators were still at large. Thus, the only query is whether she possessed facts that justified focusing suspicion on Kessler. While the concept of reasonable suspicion cannot be reduced to a neat formula, a leading commentator has suggested a number of commonsense factors for consideration in determining whether there exists reasonable suspicion that a particular individual was involved in a very recent crime. These include:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight;

3

(5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

4 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 9.4(g), at 550-51 (4th ed. 2004). Such factors are pertinent because they tend to limit focus to the universe of persons who could have been involved in the reported crime and increase the likelihood that a particular person was involved.

Application of such factors is illustrated in several Idaho appellate decisions. In *State v. Rawlings*, 121 Idaho 930, 829 P.2d 520 (1992), our Supreme Court considered a circumstance where officers responded to a reported burglary of a business during predawn hours. When police arrived at the building, they saw visible signs of forced entry and believed that the perpetrator might still be on the premises. They then saw an individual walking a short distance away and stopped him for questioning. The Supreme Court found reasonable suspicion for this detention, stating:

> The defendant was the only person in the area other than the police officers. The defendant was walking away from the locale of the reported burglary. The defendant departed from a walkway and proceeded to cross the parking lot, which course of travel would take him out of the vision of the police officers. There was a motel in the direction in which the defendant was traveling. It is possible that the defendant could have been on an innocent mission, but these facts, together with the reported crime, provided objectively reasonable grounds which were adequate to support a police officer's suspicion of criminal activity. These facts, in their totality, provide a basis for the trial court's conclusion that the police officer's stop of the defendant was a valid detention of a person for the purpose of investigating possible criminal activity, although there was no probable cause to make an arrest.

*Id.* at 933, 829 P.2d at 523 (citation omitted).

Similar circumstances were presented in *State v. Robertson*, 134 Idaho 180, 183-85, 997 P.2d 641, 644-45 (Ct. App. 2000), where a police officer had responded to a nighttime report that an audible security alarm had sounded at a local business, which the officer knew had been burglarized and vandalized on several previous occasions. Upon arriving at the scene, the officer noticed the defendant about 100 to 125 feet from the business, walking away. He was the only person in the area. The officer detained the defendant for investigation and discovered drugs during a pat-down search. This Court upheld the district court's denial of the defendant's suppression motion, concluding that there existed objectively reasonable grounds for the investigative stop.

4

*State v. Nevarez*, 147 Idaho 470, 210 P.3d 578 (Ct. App. 2009), is also instructive. In that case, at about 1 a.m. a sheriff's deputy received the report of an armed robbery that had just occurred at a store in the small town of Rupert. It was reported that the robbery was committed by two Hispanic individuals wearing hooded sweatshirts, stocking caps, and bandannas. There was no description of any car used by the robbers, nor even information as to whether they had left the scene of the robbery in a vehicle. At the time of the report, the deputy was patrolling in a town about eight miles away. The deputy drove toward Rupert, checking approaching vehicles as he went. He met three or four vehicles, but found none of them to be suspicious. Within the time window of possibility for a vehicle to have traveled to the deputy's location from Rupert, the deputy saw a car coming. He activated his radar to check its speed and learned that it was traveling 42 miles per hour in a 55 mile-per-hour zone. This drew the deputy's attention because, in his experience, most people drive at or slightly above the speed limit and tend to drive well under the speed limit only if they are elderly, intoxicated, or trying to avoid the attention of police. As the vehicle approached and went by him, the deputy saw four individuals inside who appeared to be Hispanic. He saw the individuals in the vehicle look at him as they went by, wearing varying expressions of concern or exclamation on their faces. The deputy turned and followed the vehicle, observing that the driver remained abnormally cautious in his driving and further observing unusual movements by the occupants. The deputy stopped the vehicle, and evidence from the robbery was discovered. This Court affirmed the denial of the defendant's suppression motion, concluding that, collectively, the information available to the deputy was sufficient to create reasonable suspicion warranting a stop of the vehicle to investigate whether the occupants had committed the reported robbery.

In the present case, Officer Kauffman knew that two men had been reported running from an officer at a point not far from the scene of the car break-in. She drove in the direction that the men had been running, to a location they could have reached within the elapsed time. It was about 1:30 a.m., and the officer saw only one individual on the street, that being Kessler. His dark jacket and pants matched the general description of the suspects, and he was walking briskly. Given that Kessler fit the general description of the persons sought, that he was encountered in the known direction of their flight at a location that they could be expected to reach within the elapsed time, that he was out walking late at night when few individuals would be on the street, that the officer observed no other individuals in the vicinity, and that Kessler

5

briefly looked away as if seeking an escape route, it was objectively reasonable for the officer to suspect Kessler of being one of the escaping perpetrators, warranting his detention to investigate.[1]   The district court's denial of the motion to suppress on this basis is therefore affirmed.

**B.    The Frisk**

The Fourth Amendment prohibition against unreasonable searches is not violated when an officer conducts a pat-down search of a detainee for weapons if the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."  *Terry*, 392 U.S. at 27.  *See also State v. Wright*, 134 Idaho 79, 82, 996 P.2d 298, 301 (2000).  Such a weapons frisk is allowed to enable a police officer to interact with the individual without fear of violence being inflicted upon the officer or others.  *Henage*, 143 Idaho at 660, 152 P.3d at 21; *Rawlings*, 121 Idaho at 933, 829 P.2d at 523.  Whether such a search is justified is evaluated in light of the "facts known to the officers on the scene and the inference of the risk of danger reasonably drawn from the totality of the circumstances."  *Wright*, 134 Idaho at 82, 996 P.2d at 301.

Kessler acknowledges that before he was frisked, the officer knew he was armed because Kessler had admitted to having a knife.  He argues, however, that the frisk was still unwarranted because the officer had no reasonable suspicion that Kessler was dangerous.

A similar argument was addressed by our Supreme Court in *Henage*.  At issue there was the application of the holdings in *Terry* and *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), regarding whether an officer must reasonably believe that a detainee is both armed *and* dangerous before a pat-down search may be conducted. The defendant argued that both elements are required, while the State argued that if a person is armed, he is sufficiently dangerous to warrant a search for weapons.  Our Supreme Court rejected both arguments, saying:

---

[1]   In its order denying the suppression motion, the district court made a finding that the officer observed that Kessler was perspiring and breathing hard (as if he had recently been running).  The court made no finding, however, as to whether these observations occurred before or after Kessler was seized, and the court could not have properly made such a finding because the State did not present evidence as to when these observations were made in relation to the officer's ordering Kessler to lie down.  Therefore, we do not consider those observations in evaluating the justification for the stop, for reasonable suspicion analysis requires that a court consider only the facts known to the officer before the detention.

Neither side has grasped the essence of *Terry*. A person can be armed without posing a risk of danger. On the other hand, a person can be dangerous, without apparently being armed. The primary concern of the Supreme Court in *Terry* and its progeny, including *Mimms*, was to protect the safety of officers and others from harm when dealing with a person who may pose a risk. As the *Terry* court put it, "where nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

*Henage*, 143 Idaho at 661, 152 P.3d at 22.

Our inquiry, therefore, is to determine whether, based upon the facts known to Officer Kauffman, it was objectively reasonable for her to conclude that a pat-down search of Kessler for weapons was necessary for the protection of herself or others. *Id.* at 661, 152 P.3d at 22. In this analysis, "due weight must be given not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which [she] is entitled to draw from the facts in light of [her] experience." *Terry*, 392 U.S. at 27.

We conclude that it was objectively reasonable for Officer Kauffman to conduct a search in this instance. Kessler had admitted that he had a knife in his pocket. When the officer first observed Kessler, he looked away as if contemplating an effort to escape. When approaching Kessler, the officer noticed that he was breathing heavily and perspiring, which reinforced her suspicion that he had been involved in an incident where a car window was broken. So far as Officer Kauffman was aware, there was a confederate of Kessler who was still at large and might be nearby. The officer, who was alone with no backup officer present, testified that she was concerned for her safety. Although Kessler was compliant with the officer's commands, the officer's safety concern was objectively reasonable in these circumstances. Therefore, the district court did not err in holding that the frisk was lawful.

## III.

## CONCLUSION

The district court's denial of the defendant's motion to suppress evidence is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**