# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46174

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: September 17, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| BRANDON D G PARRIS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Bruce L. Pickett, District Judge.

Judgment of conviction for possession of a controlled substance, methamphetamine, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent. Kale D. Gans argued.

---

HUSKEY, Judge

Brandon D G Parris appeals from his judgment of conviction for possession of a controlled substance, methamphetamine. Parris asserts the district court erred in denying his motion to suppress. Specifically, he asserts the district court erred as a matter of fact in concluding Parris resembled the zoo burglary suspect and erred as a matter of law in concluding the physical resemblance provided reasonable suspicion for the officer to stop Parris in connection to the zoo burglary. The State asserts the officer had reasonable suspicion because Parris resembled photographs of the zoo burglary suspect. Because the district court's finding that Parris resembled a zoo burglary suspect was supported by substantial and competent evidence and the officer had reasonable suspicion to conduct an investigatory stop, this Court affirms.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

There were two "incidents" at the Idaho Falls Zoo. The first incident[1] occurred in August, and the zoo security camera took photographs of a suspect on a BMX-style bicycle. In September, the second incident occurred when a burglar stole coins from the zoo. As in August, the security camera took photographs of a suspect on a similar BMX-style bicycle. Photographs of the suspect were circulated within local law enforcement agencies. Approximately seven days after the September burglary, Officer Smith was on patrol and noticed a man riding a BMX-style bicycle, wearing a backpack, and carrying items in his hands. Officer Smith believed the man and his bicycle resembled the burglary suspect in the circulated photographs. Also drawing the officer's attention was that although it was near 11:30 p.m., the man did not have safety lights on his bicycle. Officer Smith initiated a stop to further investigate both lines of inquiry. During the stop, Officer Smith identified the bicyclist as Parris and discovered he was currently on probation.

Officer Smith noticed that Parris had a drill with him. The officer was suspicious that Parris may have burglary tools or stolen items from the zoo in his backpack. The officer requested Parris's consent to search. When Parris refused to consent to the search, Officer Smith attempted to contact Parris's probation officer. The officer was unable to reach Parris's probation officer directly, but spoke with a supervising probation officer who gave the officer permission to search Parris. Officer Smith communicated to Parris that if Parris continued to refuse to consent to a search, the supervising probation officer would arrive at the scene and issue an agent's warrant for his arrest. Parris subsequently consented to a search of his person and backpack.

By the time Officer Smith finished talking with the supervising probation officer, another law enforcement officer arrived at the scene. The second officer noticed what appeared to be a knife in Parris's pocket. Parris was placed in handcuffs for officer safety. During a search, Officer Smith found a small baggy containing a white crystalline substance in one of Parris's pockets. This substance tested presumptively positive for methamphetamine. A further search of Parris's backpack revealed a digital scale.

---

[1] The record refers to an "incident" and does not clarify the nature of the event.

Parris was charged with possession of a controlled substance, methamphetamine, and possession with intent to use drug paraphernalia. Parris filed a motion to suppress all evidence obtained by the warrantless search and seizure on the basis that Parris's failure to use a bicycle light was the only legitimate basis for the initial seizure. Parris alleged the officer abandoned this initial purpose and prolonged the seizure to investigate Parris's connection to the zoo burglary without reasonable suspicion. Parris also argued there was not reasonable suspicion to stop him in connection with the zoo burglary.

The district court found Officer Smith initiated the stop of Parris for two reasons: his failure to use a bicycle light at night and his resemblance to the zoo burglary suspect. The district court held Officer Smith had reasonable suspicion to seize Parris in connection with the zoo burglary because Parris and his bicycle resembled photographs of the suspect and his bicycle that were circulated by law enforcement. The district court also found that Parris waived any Fourth Amendment protections as a condition of probation and the methamphetamine would have been inevitably discovered. The district court denied Parris's motion to suppress. Parris entered a conditional guilty plea to possession of a controlled substance, methamphetamine, and preserved his right to appeal the court's denial of the motion to suppress. The misdemeanor possession with intent to use drug paraphernalia was dismissed. The district court sentenced Parris to a unified sentence of four years, with one and one-half years determinate, suspended the sentence, and placed Parris on probation. Parris timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

Where a lower court makes a ruling based on alternative grounds and only one ground is challenged on appeal, the appellate court must affirm on the uncontested basis. *Morrison v. St. Luke's Reg'l Med. Ctr., Ltd.*, 160 Idaho 599, 609, 377 P.3d 1062, 1072 (2016).

## III.

## ANALYSIS

On appeal, Parris argues that because Officer Smith did not have reasonable suspicion to believe Parris was the zoo burglary suspect, any detention beyond the initial detention for the failure to have a bicycle light unreasonably prolonged the detention. In asserting that there was no reasonable suspicion to stop Parris in connection to the zoo burglary, Parris challenges the district court's factual finding--that Parris resembled the zoo burglary suspect--that provided the factual basis for the officer's reasonable suspicion about Parris's involvement in the zoo burglary. Parris argues this factual finding is not supported by substantial and competent evidence and without this fact, there is no link between Parris and the zoo burglary. The State argues the district court's factual finding of physical resemblance was supported by substantial and competent evidence; therefore, the district court correctly held the officer had a reasonable and articulable suspicion to stop Parris to investigate the zoo burglary. Additionally, the State argues that the district court also denied Parris's motion to suppress because Parris waived any Fourth Amendment protections as a condition of probation and the methamphetamine would have been inevitably discovered. The State argues that because Parris does not challenge on appeal the alternate grounds for denying the motion to suppress, the district court's denial must be affirmed.

In response, Parris argues that absent the stop, there would have been no inquiry into his probation status, nor could there have been any inevitable discovery and so the district court's decision cannot be affirmed on those grounds without addressing whether the stop was constitutionally valid. As to the district court's factual findings regarding the resemblance between Parris and his bicycle and the suspect and his bicycle in the photographs, Parris assumed that the copies of the photographs from the zoo security camera in the record were the photographs the district court reviewed. These photographs, argues Parris, were too low quality for a trier of fact to determine that Parris resembled the person photographed. Following the State's motion, the Supreme Court augmented the clerk's record with the full color, high-quality photographs that more accurately represent the photographs considered by the district court at

4

the motion to suppress hearing. These photographs showed a greater level of detail, including that the zoo burglary suspect had facial hair and was wearing a backpack, hooded sweatshirt, and hat--characteristics that matched Parris on the night of the seizure.

However, Parris asserts the higher-quality pictures do not lend credence to the district court's factual determination. Instead, Parris argues the greater level of detail visible in the new photographs shows discrepancies that further support his claim that he did not resemble the zoo burglary suspect. For example, Parris argues that the higher-quality photographs show the zoo burglary suspect had short, kempt hair and wore a clean hooded sweatshirt with no drawstrings, baggy pants with no belt, and no headphones. At the time of the stop, Parris had long, unkempt hair and wore a dirty hooded sweatshirt with drawstrings, baggy pants with a belt, and headphones.

As an initial matter, Idaho Appellate Rule 35(a)(4) requires an appellant to raise issues in the initial appellate brief. Issues raised for the first time in a reply brief are not considered. *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). Parris failed to address the district court's alternative grounds for denying the motion to suppress and only raised his rationale for the omission--that the district court could not be affirmed on the alternative grounds without addressing the constitutional validity of the stop--in the reply brief. However, even if the district court could be affirmed on an alternative ground, Officer Smith had reasonable suspicion for the investigative stop.

When reviewing a trial court's denial of a defendant's motion to suppress, this Court gives deference to the trial court's findings of fact, which will be upheld so long as they are not clearly erroneous. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *Id*. The district court made a finding on the record that after looking at the photographs submitted as exhibits and looking at Parris, Parris and the burglary suspect appeared to be "pretty similar," and later explicitly found Parris resembled the suspected zoo burglary suspect. A review of the photographs admitted at the hearing and Officer Smith's body camera footage demonstrates that the district court's conclusion is supported by substantial evidence. Parris and the zoo burglary suspect were slim, Caucasian men with facial hair; wore baggy clothing, baseball hats, and backpacks; and rode BMX-style bicycles with a dark frame and light colored front fork. Although Parris points to the fact that he is forty-three years old while the email

5

circulated by the detective investigating the burglary described the suspect as a male in his 20s or 30s, this difference is insufficient for this Court to overturn the district court's factual finding. Absent a clearly erroneous finding, re-analyzing the facts presented is not within the purview of this Court. As such, the district court did not err in its factual determination that Parris resembled the zoo burglary suspect.

Next, this Court must determine whether based on the physical resemblance, Officer Smith had reasonable suspicion to conduct an investigatory stop of Parris in connection to the zoo burglary. Unlike the deference given to the factual findings of the district court, this Court freely reviews the constitutionality of the seizure. *Bishop*, 146 Idaho at 810, 203 P.3d at 1209. Parris contends that the seizure was unconstitutional because Officer Smith lacked reasonable suspicion to support an investigative stop in connection to the zoo burglary.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. IV; *Bishop*, 146 Idaho at 810, 203 P.3d at 1209. "Evidence obtained in violation of the amendment generally may not be used as evidence against the victim of the illegal government action." *Bishop*, 146 Idaho at 810-11, 203 P.3d at 1209-10. When a defendant moves to exclude evidence on the grounds that it was obtained in violation of the Fourth Amendment, the government carries the burden of proving that the search or seizure in question was reasonable. *Id.* at 811, 203 P.3d at 1210.

The Fourth Amendment's protection against unreasonable seizures includes brief investigatory stops by law enforcement officers. *United States v. Cortez*, 449 U.S. 411, 417 (1981). The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to

effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002).

The level of justification required for a seizure to be reasonable at its inception depends on the intrusiveness of the seizure. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. Although the "quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause," an officer's mere hunch that the individual is involved in criminal activity is not enough. *Id.* Instead, the totality of the circumstances must show that the detaining officer had a particularized and objective basis for suspecting the particular person of criminal activity prior to the stop. *Cortez*, 449 U.S. at 417-18; *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

The particularized and objective basis can be the product of the inferences and deductions made by an officer analyzing objective information, including information from police reports and various observations. *Cortez*, 449 U.S. at 418. Although particularized suspicion must be grounded in the standard of reasonableness embodied in the Fourth Amendment, inherent in this determination is an acknowledgment that investigatory stops concern probabilities, not hard certainties, that the individual is involved in criminal activity. *See id.*; *State v. Munoz*, 149 Idaho 121, 126, 233 P.3d 52, 57 (2010).

Parris concedes Officer Smith's initial detention for Parris's failure to use a bicycle light after dark was constitutional. However, Parris asserts that any further seizure was unconstitutional because Officer Smith did not have reasonable suspicion to believe Parris was the zoo burglary suspect at the inception of the investigatory detention or as a basis to continue the stop based on the lack of a bicycle light. Parris asserts that the reasons for the initial stop were abandoned and Officer Smith extended the search on a hunch that Parris had drugs.

However, Officer Smith testified, and the district court found, that Parris was stopped for two reasons: his failure to use a bicycle light at night and his resemblance to the zoo burglary suspect. Throughout the duration of the stop, Officer Smith pursued both lines of inquiry. Although no further investigation may have been needed for Parris's failure to use a bicycle light, Officer Smith took steps to further confirm or dispel his suspicion that Parris resembled the zoo burglary suspect. For example, Officer Smith asked Parris if he had been involved in any burglaries; attempted to download the electronic message containing the photographs of the zoo burglary suspect; and discussed Parris's resemblance to the zoo burglary suspect with a

7

probation officer, the supervising probation officer, and the second law enforcement officer who arrived at the scene. Therefore, contrary to Parris's argument, Officer Smith was investigating the reasonable suspicion that gave rise to the initial detention and he did not abandon the initial lines of inquiry to initiate another.

Parris relies on the factors enumerated in *State v. Kessler*, 151 Idaho 653, 262 P.3d 682 (Ct. App. 2011) to support his argument that even if Parris resembled the zoo burglary suspect, this did not constitute reasonable suspicion to conduct the investigatory stop. However, *Kessler* applies to situations where officers are responding to the scene of a crime that had just been committed. *Id.* at 655, 262 P.3d at 684. In affirming the district court's order denying the motion to suppress, the *Kessler* Court noted that "a crime, a car break-in, had just occurred and that at least two of the suspected perpetrators were still at large." *Id.* About six to eight blocks from the crime scene, an officer saw Kessler, who matched the description of the suspects. Believing that Kessler was about to flee, the officer ordered Kessler to the ground. Upon removing a knife from Kessler's front pocket, methamphetamine also fell out. In analyzing whether the officer had reasonable suspicion that Kessler was involved in the crime, the Court noted that "while the concept of reasonable suspicion cannot be reduced to a neat formula, a leading commentator has suggested a number of commonsense factors for consideration in determining whether there exists reasonable suspicion that a particular individual was involved in a very recent crime." *Id.* Those factors are relevant in cases involving very recent crimes "because they tend to limit focus to the universe of persons who could have been involved in the reported crime and increase the likelihood that a particular person was involved." *Id.*

Here, the record indicates that the zoo was burglarized approximately seven days prior to the officer's investigatory stop of Parris. Therefore, the *Kessler* factors are largely inapplicable to a determination of whether the officer had reasonable suspicion to stop Parris because the zoo burglary suspect had approximately one week to flee the immediate area, change clothing, or take other precautions to separate himself from the crime. Instead, this Court must assess the totality of the circumstances to determine if the detaining officer had a particularized and objective basis for suspecting Parris's connection to the zoo burglary at the time of the stop. *Cortez*, 449 U.S. at 417-18; *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

Courts have consistently held that a particularized and objective basis exists for an investigatory stop when an officer believes an individual matches the description of a suspect

wanted for a prior crime if the description comes from a reliable source and shows indicia of reliability. *See United States v. Hensley*, 469 U.S. 221, 232 (1985) (holding that a police officer who lacked personal knowledge of the facts giving rise to reasonable suspicion may stop an individual based solely on a wanted flyer as long as the officer who issued the flyer had reasonable suspicion to believe that the individual committed a crime); *Bishop*, 146 Idaho at 811-812, 203 P.3d at 1210-1211 (holding that a tip providing a description of a suspect alleged to have committed a crime amounts to reasonable suspicion when the tip was from an ascertainable informant and contained an indicia of reliability).

Here, at the inception of the investigatory stop, Officer Smith had various pieces of objective and reliable data from which to form a particularized suspicion that Parris resembled the zoo burglary suspect and might have committed the zoo burglary, including Parris's physical resemblance to the zoo burglary suspect and his use of a similar bicycle, at night, while carrying a drill. Prior to the stop, Officer Smith had reviewed an internally circulated email with four pictures of the zoo burglary suspect. The email described the suspect as a "white male in his 20s or 30s with a thin build" riding a BMX-style bicycle with a dark frame and light colored front fork. The law enforcement officer who circulated the email had reasonable suspicion to believe the individual in the photographs burglarized the zoo because the images were taken from security camera footage during the two nights when the incidents occurred and each depicted a similar-looking man riding a similar-style bicycle through the zoo parking lot. Officer Smith received this information from a police detective investigating the incidents; thus, the descriptions of the suspect came from a reliable source. Officer Smith reasonably relied on his observations of Parris and reasonably concluded that Parris resembled the person in the photographs. The investigatory stop to investigate Parris's connection to the zoo burglary was justified in its inception because Officer Smith had reasonable, articulable suspicion based on particular and objective facts that Parris was the zoo burglary suspect. Officer Smith did not abandon this line of inquiry during the investigative detention. Because the officer had reasonable suspicion to conduct an investigatory stop, the district court did not err in its denial of Parris's motion to suppress.

## IV.

## CONCLUSION

The district court's factual finding that Parris resembled the zoo burglary suspect was supported by substantial and competent evidence and gave rise to the officer's reasonable suspicion to conduct an investigatory stop. Consequently, the officer did not unlawfully extend the stop to investigate the zoo burglary. Accordingly, the district court did not err in denying Parris's motion to suppress and the judgment of conviction is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.