195 P.3d 716

STATE of Idaho, Plaintiff–Respondent,

v.

Jeffery E. MARTIN, Defendant–Appellant.

No. 33081.

Court of Appeals of Idaho.

July 9, 2008.

Review Denied Oct. 27, 2008.

Molly J. Huskey, State Appellate Public
Defender; Erik R. Lehtinen, Deputy Appel-

late Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Jeffery E. Martin appeals from his judgment of conviction for possession of methamphetamine. Martin contends that the district court erred by denying his motions to suppress evidence, to test a syringe for DNA at state expense, and to have the methamphetamine re-tested at public expense. We affirm.

## I.

## FACTUAL & PROCEDURAL BACKGROUND

Following a traffic stop of a vehicle driven by Martin, a Boise police officer frisked Martin for weapons. A number of unused syringes were found in his pocket. Thereafter, Martin's vehicle was searched with his consent, and the officer found a small amount of a substance suspected to be methamphetamine, another syringe, and other paraphernalia. Martin was arrested and charged with possession of methamphetamine, Idaho Code § 37–2732(c)(1), and possession of drug paraphernalia, I.C. § 37–2734A(1).

Prior to trial, Martin discharged his public defender and was allowed to represent himself. He then filed a motion to suppress the physical evidence found in his pocket and vehicle and the statements he made during the detention, contending that his Fourth Amendment rights had been violated when the officer frisked him. Martin also filed motions to have the syringe from the vehicle tested for DNA at state expense and to have the methamphetamine re-tested at public expense. The district court denied the motions. The matter proceeded to trial and Martin was convicted on both charges. He now appeals the denial of his various motions.

## II.

## ANAYLSIS

### A. Suppression Motion

At the hearing on Martin's suppression motion the officer testified and a transcript of Martin's preliminary hearing was admitted into evidence. The following uncontroverted facts were presented. At 11:30 p.m. Boise City police officer Damon Baughman stopped a vehicle driven by Martin after running a check on the license plates and discovering that they did not match the vehicle. When Baughman asked for identification, Martin produced an inmate card from the Idaho Department of Correction. When asked for a driver's license, Martin stated that he did not have one because it was expired and that he had just been released from prison, where he had been for the last ten years. When asked whether he had any weapons on his person, Martin stated that he had a knife.

Officer Baughman returned to his vehicle and called for a backup officer. When the second officer arrived, that officer checked on the vehicle identification number of Martin's vehicle to determine whether it was stolen. At about the same time, Baughman instructed Martin to exit the vehicle so that he could be frisked for weapons. Baughman conducted the frisk, located and removed a knife, and felt additional hard objects in Martin's pockets. When asked what the objects were, Martin responded that they were insulin needles used to inject oil into a spray painter at Martin's place of work. Baughman asked for and received Martin's consent to a search of the vehicle. The second officer conducted the search, which turned up a black pouch, within which were baggies containing methamphetamine, a spoon, some cotton and another syringe.

Martin contends that the pat-down search of his person for weapons was unjustified and that his consent to search the vehicle was derived from exploitation of that illegal search. Accordingly, he argues, all of the physical evidence and his statements made when confronted with the contents of the black pouch should have been suppressed.

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 898 (1968). A search conducted by law enforcement officers without a warrant is unreasonable per se unless it falls within one of the recognized exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973). One such exception is a "narrowly drawn authority" for a police officer to conduct a pat-down search of a detainee for weapons for the protection of the police officer or others when the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. *See also State v. Wright*, 134 Idaho 79, 82, 996 P.2d 298, 301 (2000); *State v. Rawlings*, 121 Idaho 930, 933, 829 P.2d 520, 523 (1992). Such a weapons frisk is allowed to permit a police officer to interact with the individual without fear of violence being inflicted upon the officer's person. *State v. Henage*, 143 Idaho 655, 660, 152 P.3d 16, 21 (2007); *Rawlings*, 121 Idaho at 933, 829 P.2d at 523. "Whether an officer may reasonably justify such a search is evaluated in light of the 'facts known to the officers on the scene and the inference of the risk of danger reasonably drawn from the totality of the circumstances.'" *Wright*, 134 Idaho at 82, 996 P.2d at 301.

In *Henage*, the parties disagreed on the application of the holdings in *Terry* and *Pennsylvania v. Mimms*, 434 U.S. 106, 112, 98 S.Ct. 330, 334, 54 L.Ed.2d 331, 337 (1977) regarding whether an officer must reasonably believe that a detainee is both armed *and* dangerous before a pat-down search may be conducted. Our Supreme Court focused the inquiry as follows:

> [The defendant] argues that a person must both be armed and dangerous before a pat down search can be made, while the State argues that a person need only be armed in order to perform such a search. Neither side has grasped the essence of *Terry*. A person can be armed without posing a risk of danger. On the other hand, a person can be dangerous, without apparently being armed. The primary concern of the Supreme Court in *Terry* and its progeny, including *Mimms*, was to protect the safety of officers and others from harm when dealing with a person who may pose a risk. As the *Terry* court put it, "where nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.

*Henage*, 143 Idaho at 661, 152 P.3d at 22.

■ In determining the reasonableness of a pat-down search, this Court employs an objective standard. *Id.* at 660, 152 P.3d at 21. Our inquiry is to determine whether, based upon the facts known to Officer Baughman, it was objectively reasonable for him to conclude that a pat-down search of Martin for weapons was necessary for the protection of himself or others. *Id.* at 661, 152 P.3d at 22. In this analysis, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

■ At the time of the frisk, Officer Baughman and the second officer were investigating whether the vehicle Martin was driving was stolen because the license plates on the stopped vehicle did not belong to that vehicle. The officers knew that Martin had no driver's license, that he had recently been released from prison after ten years of incarceration and hence had been convicted of at least one significant felony, and that Martin admitted that he was carrying a weapon. Officer Baughman testified that, in his experience where there is one weapon there are sometimes others. Baughman testified that knowing this information, he was concerned for his safety. We conclude that Officer Baughman's concern was objectively reason-

able, and that the frisk was justified to ensure the officers' safety. The district court did not err in denying the suppression motion.

## B. Motions to Test Physical Evidence at State Expense

As an indigent defendant representing himself, Martin filed motions to have the substance from the baggies re-tested and to have the syringe found in the black pouch tested for DNA, all at public expense. The district court denied the motions. In this appeal, Martin contends that the denial of his motions violated his right to due process.

The parties appear to disagree on the legal standards applicable to Martin's requests. Martin asserts that the standards set forth in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) dictate that his motions should have been granted. In *Ake,* the United States Supreme Court addressed, in a death penalty case, whether the trial court violated the indigent defendant's constitutional rights by denying his motion for a psychiatric evaluation at state expense. The Court prefaced its discussion as follows:

> This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Id.* at 76, 105 S.Ct. at 1092, 84 L.Ed.2d at 61. The Court further stated:

> [W]hile the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system." To implement this principle, we have focused on identifying the

"basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.

> To say that these basic tools must be provided is, of course, merely to begin our inquiry. In this case we must decide whether, and under what conditions, the participation of a psychiatrist is important enough to preparation of a defense to require the State to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense. Three factors are relevant to this determination. The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

*Id.* at 77, 105 S.Ct. at 1093, 84 L.Ed.2d at 62 (citations omitted). Finding the defendant's interest in the accuracy of a criminal trial to be compelling, the State's interest to be only economic, and the need for psychiatric assistance critical, the Court determined that due process required the provision of psychiatric assistance. The Court reasoned:

> When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.... In such a circumstance, where the potential accuracy of the jury's determination is so dramatically enhanced, and where the interests of the individual and the State in an accurate proceeding are substantial, the State's interest in its fisc must yield.

*Id.* at 82–83, 105 S.Ct. at 1095–1096, 84 L.Ed.2d at 65–66.

On a parallel line, nearly twenty years prior to *Ake* the Idaho legislature adopted I.C. § 19–852(a)(2), which currently provides:

> (a) A needy person ... who is under formal charge of having committed, or is

being detained under a conviction of, a serious crime, is entitled:

. . . .

(2) to be provided with the necessary services and facilities of representation (including investigation and other preparation). The attorney, services, and facilities and the court costs shall be provided at public expense to the extent that the person is, at the time the court determines need, unable to provide for their payment.

This statute was applied by the Idaho Supreme Court in *State v. Olin*, 103 Idaho 391, 394, 648 P.2d 203, 206 (1982), decided three years prior to *Ake*. The Court there stated:

The statute recognizes that there are cases where a criminal defendant's right to a fair trial may be jeopardized unless there is access not only to an attorney, but also to certain specialized aid in the preparation of a defense. *State v. Powers*, 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975). Included within the scope of I.C. § 19–852(a) are the fourteenth amendment requirements of due process and equal protection as they apply to indigent defendants. In *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 [403] (1971), the United States Supreme Court made it clear that "state[s] must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." It is equally evident that if a defendant is denied access to the basic tools of an adequate defense, then he has also been denied his due process right of a fair trial. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). However, what constitutes the basic tools or necessary services of an adequate defense has not been clearly defined, *Britt v. North Carolina, supra; State v. Coronado*, 98 Idaho 421, 423, 565 P.2d 1378, 1380 (1977), and may indeed vary from case to case. *See State v. Powers*, 96 Idaho at 838, 537 P.2d at 1374. Consequently, in order to determine under I.C. § 19–852(a) whether the requested services in the present case were necessary in order to

provide the defendant with an adequate defense, we must review the requests individually.

More recently, in *State v. Lovelace*, 140 Idaho 53, 65, 90 P.3d 278, 290 (2003), our State Supreme Court held:

The constitution does not require a state to provide expert or investigative assistance merely because a defendant requests it. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982), *citing United States ex rel. Smith v. Baldi*, 344 U.S. 561, 568, 73 S.Ct. 391, 395, 97 L.Ed. 549, 556 (1953). A defendant's request for expert or investigative services should be reviewed in light of all circumstances and be measured against the standard of "fundamental fairness" embodied in the due process clause. *Id., citing Watson v. Patterson*, 358 F.2d 297, 298 (10th Cir.1966). Before authorizing the expenditure of public funds for a particular purpose in an indigent's defense, the trial court must determine whether the funds are necessary in the interest of justice. *State v. Powers*, 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975), *cert. denied*, 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). Such a review necessarily involves the exercise of the sound discretion of the trial court, and a denial of a request for investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case. *State v. Olin, supra.*

Martin's position on appeal implies that Idaho courts have been employing the wrong standard for evaluating requests by indigent defendants for the appointment of experts or other assistance. The focus of his argument is that Idaho courts must apply the federal test enunciated in *Ake*, in place of the traditional Idaho test set forth in *Olin* and *Lovelace*. The State, in response, relies primarily upon the Idaho authorities, but does not contend that *Ake* applies only to capital cases or only to requests for psychiatric assistance or is otherwise inapplicable here.[1]

---

1. The *Ake* majority opinion does not purport to    limit its due process analysis to death penalty

This Court sees little or no substantive difference between the *Ake* standards and the Idaho Supreme Court's statements in *Olin* and *Lovelace*. To satisfy the *Ake* standard, a defendant seeking assistance at state expense must make a threshold showing that the assistance has probable value to address what will be a significant factor at trial, such that the accuracy of the jury's determination would be called into question if the assistance were denied. *Ake*, 470 U.S. at 74, 83, 105 S.Ct. at 1091, 1096, 84 L.Ed.2d at 60, 66. Similarly, *Olin* and *Lovelace* require that a defendant show that the requested assistance is necessary in the interest of justice when reviewed in light of all circumstances and measured against the standard of fundamental fairness embodied in the Due Process Clause. While articulating the test differently, each of these cases requires the provision of assistance at public expense where it is necessary for a fair trial and a meaningful opportunity to present a defense, while sifting out requests for services that are not shown to be reasonably necessary for these purposes. In any event, to the extent that any conflict exists, the *Ake* decision of the United States Supreme Court controls, and we therefore review Martin's requests for testing with reference to the *Ake* articulation of the standards.

Martin first asserts that the district court erred by denying his motion to re-test the substance that the State's tests found to be methamphetamine. We therefore examine whether Martin made a threshold showing that the identity of the substance as methamphetamine was likely to be a significant issue at his trial. To meet this threshold showing a defendant generally must inform the trial court of the nature of the prosecution's case and the evidence linking him to the crime, as it relates to the requested assistance. *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir.1987). *See also Moore v. State*, 390 Md. 343, 889 A.2d 325, 339–40 (2005).

In presenting his motion, Martin did not inform the district court of the prosecution's evidence concerning the nature of the substance. When arguing his motion, Martin mistakenly assumed that the only test that had been conducted was a field test performed by the arresting officer. The prosecutor informed the trial court that the state laboratory had also tested the substance and confirmed that it was methamphetamine. In response, Martin presented no reason to suspect that the state laboratory's testing was flawed, that its procedures were questionable, or that it had a history of inaccurate testing. Martin presented no evidence showing any reason to believe that the substance was something other than methamphetamine. To the contrary, the State's evidence included a tape recording of Martin's acknowledgement to the arresting officer that the substance found in the pouch was methamphetamine. Under these circumstances, the district court correctly denied the motion because Martin made no threshold showing that the identity of the substance was likely to be a significant issue at trial.

Martin also moved to test the syringe found in the black pouch for DNA, apparently on the theory that if someone else's DNA were found, it would tend to both negate the possession of drug paraphernalia charge and show that the methamphetamine found in the pouch along with the syringe did not belong to Martin.[2] Again, Martin failed to inform the district court of the evidence in the State's possession that was relevant to his request. In the same tape recording referenced above, Martin admitted to the arresting officer that the camera pouch belonged to him; and when asked why he was driving around with methamphetamine, Martin responded, "Because I'm a f——ing idiot." In

cases or those where psychiatric assistance is requested to aid in an insanity defense. In *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the defendant moved for appointment of a criminal investigator, a fingerprint expert and a ballistics expert at state expense. The Supreme Court did not suggest that the *Ake* standard was inapplicable but affirmed the denial of those requests on the ground that the defendant had "offered little more than undeveloped assertions that the requested assistance would be beneficial...." *Id.* at 324 n. 1, 105 S.Ct. at 2637 n. 1, 86 L.Ed.2d at 236 n. 1.

2. The prosecution did not possess any DNA evidence in this case. Therefore Martin was not seeking the assistance of a DNA expert to respond to the State's evidence.

light of this tape recording and the fact that the pouch was found in a car that Martin was driving, Martin failed to make the requisite showing that his knowing possession of the methamphetamine and the syringe was likely to be a significant issue at trial such that testing of the syringe for DNA at public expense was required as a matter of due process.[3]

Because Martin did not make the required threshold showing on either of his motions, the district court did not err in denying his request for testing services. The denial of Martin's requests for testing of evidence did not deprive him of a meaningful defense or a fair trial.

## III.

## CONCLUSION

The district court did not err by denying the motion to suppress nor violate Martin's right to due process by denying his motions to have evidentiary items tested. Therefore, the judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.

---

**3.** Martin also failed to show that testing of the syringe for DNA would be of probable value to his defense. The presence of another person's DNA on the syringe would not be significantly exculpatory, as one can be knowingly in possession of a controlled substance or of drug paraphernalia even if the items have been used by or shared with others.