**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38228**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 571 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 1, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TYRELL RAMSEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for battery with intent to commit rape, sexual penetration with a foreign object, and misdemeanor battery, <u>affirmed</u>.

James Annest, Burley, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Tyrell Lee Ramsey appeals from his judgment of conviction for battery with intent to commit rape, sexual penetration with a foreign object, and misdemeanor battery. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In July 2009, Ramsey attended a party at SP's residence, which was also attended by LN. The state filed a complaint charging Ramsey with attempted rape of LN, I.C. §§ 18-6101 and 18-306, and battery with intent to commit rape upon LN, I.C. §§ 18-903 and 18-911. The state also charged Ramsey with attempted rape of SP, I.C. §§ 18-6101 and 18-306; battery with intent to commit rape upon SP, I.C. §§ 18-903 and 18-911; and sexual penetration with a foreign object upon SP, I.C. § 18-6608. All of the events leading to the charges against Ramsey occurred at the party.

1

Ramsey filed a motion to sever the charges in the information regarding LN from the charges regarding SP for trial. Ramsey also filed a motion for orders authorizing employment of an investigator and a psychiatrist at public expense, as well as a motion for an order permitting inspection of the premises of the scene of the alleged crimes. The district court denied Ramsey's motions, but thereafter authorized employment of an investigator and granted Ramsey $750 to do so.

Ramsey's case proceeded to trial before a jury on December 28. During deliberations, the jury submitted a question to the district court. Without objection from the state or Ramsey's counsel, the district court answered the jury's question by instructing the jury to continue deliberations under the direction of the instructions that had been provided. The jury returned a verdict finding Ramsey not guilty of the offenses of attempted rape and battery with intent to commit rape upon LN. However, the jury found Ramsey guilty of the included offense of misdemeanor battery upon LN, battery with intent to commit rape upon SP, and sexual penetration with a foreign object upon SP.[1] The district court sentenced Ramsey to a determinate term of 180 days for misdemeanor battery upon LN; a unified term of fifteen years, with a minimum period of confinement of ten years, for battery with intent to commit rape upon SP; and a unified term of fifteen years, with a minimum period of confinement of eight years, for sexual penetration with a foreign object upon SP. The district court ordered that Ramsey's sentences be served concurrently. Ramsey appeals, alleging numerous pretrial and trial errors.

## II.

## ANALYSIS

### A. Pretrial Rulings

#### 1. Excessive bond

Ramsey's bond was originally set by a magistrate at $250,000. At Ramsey's arraignment, the district court reduced Ramsey's bond to $100,000. Ramsey filed a motion for reconsideration of the reduction of his bond, which the district court denied. Ramsey argues that the district court erred by setting the $100,000 bond and by denying his motion for

---

[1] The jury instructions informed the jury that attempted rape was an included offense of battery with intent to commit rape. Therefore, upon finding Ramsey guilty of battery with intent to commit rape of SP, the jury did not need to consider whether Ramsey was guilty of the attempted rape of SP.

reconsideration. Specifically, Ramsey asserts that the $100,000 bond was excessive and affected his ability to locate witnesses to aid in his defense.

After trial and conviction, questions regarding excessiveness of a bond generally cannot be raised. *Stone v. State*, 108 Idaho 822, 824, 702 P.2d 860, 862 (Ct. App. 1985). On the other hand, where the defendant contends that an excessive bond materially interfered with his or her right to counsel and impeded his or her defense, an appellate court is at liberty to review the question. *Id.* Determination of the amount of bond is committed to the sound discretion of the trial court, and the decision will not be disturbed except in the case of a clear abuse of discretion. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

As noted above, at Ramsey's arraignment, the district court reduced Ramsey's $250,000 bond to $100,000. The record contains no transcript of that hearing. The record also contains no transcript of the hearing on Ramsey's motion for reconsideration, but the district court noted in its order denying Ramsey's motion that it took the motion under advisement in order to review the transcript from the preliminary hearing to consider factors bearing on the likelihood of conviction.[2] In the order, the district court explained that, after review of the transcript of the preliminary hearing, it found that the testimony of the state's witnesses did not disclose any mitigating factors that would bear on the likelihood of a conviction in Ramsey's case. The district court noted that the state's witnesses testified to the criminal acts as alleged in the information and the district court did not find any inconsistencies in the witnesses' testimony that would indicate that the witnesses were not credible or that the acts did not occur. The district court determined that the testimony at the preliminary hearing did not establish a mitigating

---

[2] Among the factors a court may consider in setting bond are the nature of the charge and any mitigating and aggravating factors that may bear on the likelihood of conviction.

factor in favor of reducing Ramsey's bond. The district court concluded that, after consideration of the factors in I.C. § 19-2904 and I.C.R. 46(a),[3] the $100,000 bond was appropriate.

It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991). Ramsey has not provided the transcript of his hearing wherein the district court reduced Ramsey's $250,000 bond to $100,000 and cited its considerations for doing so. Accordingly, we will not presume the district court erred by reducing Ramsey's bond to $100,000. Likewise, because Ramsey did not provide a transcript of the hearing regarding his motion for reconsideration, we will not presume the district court erred by denying Ramsey's motion.

### 2. Motion to sever

Ramsey argues that the district court erred by denying his motion to sever the charges regarding LN from the charges regarding SP for trial. Specifically, Ramsey asserts that, pursuant to I.C.R. 8(a), the charges were not properly joined because the charges against Ramsey involving LN and SP were not based on the same act or transaction and not connected as a common scheme or plan. Ramsey further asserts that, even if the charges were properly joined, his motion to sever should have been granted pursuant to I.C.R. 14 because Ramsey demonstrated he would suffer prejudice from trying the charged counts together since the jury would conclude he was a sexual predator and believe he was a bad person.

Whether joinder was proper is a question of law over which we exercise free review. *State v. Anderson*, 138 Idaho 359, 361, 63 P.3d 485, 487 (Ct. App. 2003). Idaho Criminal Rule 13 allows a trial court to "order two (2) or more complaints, indictments or informations to be tried together if the offenses, and the defendants if there is more than one (1), could have been joined in a single complaint, indictment or information." Idaho Criminal Rule 8(a) provides that joinder of offenses in a single complaint, indictment, or information is proper if the offenses charged "are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Thus, offenses may be joined if there is a factual connection or if they constitute part of a common scheme or plan and

---

[3]    Now I.C.R. 46(c).

4

the propriety of joinder is determined by what is alleged, not what the proof eventually shows. *State v. Field*, 144 Idaho 559, 565, 165 P.3d 273, 279 (2007); *State v. Cochran*, 97 Idaho 71, 73, 539 P.2d 999, 1001 (1975); *State v. Cook*, 144 Idaho 784, 790, 171 P.3d 1282, 1288 (Ct. App. 2007).

Cases discussing common plans have focused on whether the offenses were one continuing action or whether the offenses have sufficient common elements. *Field,* 144 Idaho at 565, 165 P.3d at 279. For example, in *State v. Schwartzmiller*, 107 Idaho 89, 91, 685 P.2d 830, 832 (1984), Schwartzmiller was convicted of three counts of lewd and lascivious conduct with two fourteen-year-old boys. Although the acts occurred at different times and with different people, the Idaho Supreme Court held that the counts were properly joined because the facts demonstrated a common plan. Schwartzmiller frequented areas where young boys may be found, befriended boys with no father figure in the home, enticed them from their homes, lowered their natural inhibitions through the use of drugs and alcohol, and committed sex acts upon them. *Id.* at 93, 685 P.2d at 834.

Here, in denying Ramsey's motion to sever the charges regarding LN from the charges regarding SP for trial, the district court noted that the information alleged that Ramsey committed the same sexual offenses against LN as he committed against SP, although Ramsey allegedly committed an additional sexual offense with SP. The district court also noted that the information alleged each offense occurred on the same night, in the same house, and at the same party. Accordingly, the district court found that the offenses charged were based on alleged acts by Ramsey that were sufficiently connected by time, location, and event to make joinder of the offenses proper. We agree.

However, even where charges are properly joined, a motion to sever may still be granted pursuant to I.C.R. 14 if the party making the motion demonstrates prejudice from trying the charged counts together. Idaho Criminal Rule 14 provides:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in a complaint, indictment or information or by such joinder for trial together, the court may order the state to elect between counts, grant separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

An abuse of discretion standard is applied when reviewing the denial of a motion to sever pursuant to I.C.R. 14. *Field*, 144 Idaho at 564, 165 P.3d at 278. When reviewing an order

5

denying a motion to sever, the inquiry on appeal is whether the defendant has presented facts demonstrating that unfair prejudice resulted from a joint trial, which denied the defendant a fair trial. *State v. Eguilior*, 137 Idaho 903, 908, 55 P.3d 896, 901 (Ct. App. 2002). In cases such as this, Idaho appellate courts review the trial proceeding to determine whether one or more of the following potential sources of prejudice appeared: (a) the possibility that the jury may confuse and cumulate the evidence, rather than keeping the evidence properly segregated; (b) the potential that the defendant may be confounded in presenting defenses; and (c) the possibility that the jury may conclude the defendant is guilty of one crime and then find him or her guilty of the other simply because of his or her criminal disposition--he or she is a bad person. *Id.*

In denying Ramsey's motion to sever, the district court concluded that Ramsey would not suffer prejudice if the charges regarding LN were not severed from the charges regarding SP for trial. Specifically, the district court determined that it reasonably expected that both of the alleged victims would testify at trial and that the jury would not confuse the testimony of LN and SP as to the elements of each offense when determining a verdict. Further, the district court determined that Ramsey had not articulated any defense that he would be prevented from presenting at trial unless the district court severed the charges and noted that Ramsey would be afforded the opportunity to present any defenses he may have. Finally, the district court explained that appropriate jury instructions would be given to protect Ramsey's right not to be found guilty if the jury viewed him as a bad person.

The evidence in this case was straightforward. Both LN and SP testified. LN testified that, after she went into the bathroom during the party, Ramsey pushed himself into the bathroom and tried to force himself upon her sexually and against her will. SP testified that, while she was outside on a porch during the party, Ramsey approached her and pulled her behind the house and tried to force himself upon her sexually and against her will. Ramsey denied that he had committed the acts. Evidence relating to the credibility of all witnesses was submitted.

After reviewing the trial transcript and record, we conclude that the facts relating to each incident were so distinct and simple that there was little risk the jury would confuse or cumulate the evidence in applying the district court's instructions to the evidence in the case. Also, Ramsey was not confounded in presenting his defenses. The jury was properly instructed on the reasonable doubt standard and that, when more than one crime is charged and each charge is based upon a separate, discrete time and incident, each separate offense and the act or incident

upon which it is based must be proved beyond a reasonable doubt and the act or incident must be separate and distinct from any other criminal act or incident. We presume a jury follows the instructions given by the district court. *Hedger*, 115 Idaho at 601, 768 P.2d at 1334; *State v. Rolfe*, 92 Idaho 467, 471, 444 P.2d 428, 432 (1968); *State v. Boothe*, 103 Idaho 187, 192, 646 P.2d 429, 434 (Ct. App. 1982). Additionally, there was ample evidence presented from which the jury could find, beyond a reasonable doubt, that Ramsey was guilty of each of the counts charged against him. This weighs against the possibility that the jury may have concluded that Ramsey was guilty of one crime and then found him guilty of the other because of his criminal disposition. Further, while Ramsey was charged with the offense of battery with intent to commit rape upon both LN and SP, the jury found Ramsey not guilty of that offense with respect to LN but guilty with respect to SP. Thus, because it appears that no prejudice would, or did, flow from the district court's refusal to grant separate trials, the district court did not err by denying Ramsey's motion to sever the charges regarding LN from the charges regarding SP for trial.

### 3. Motion for investigator

Ramsey argues that the district court's denial of his motion for an order authorizing employment of an investigator at public expense on October 14, 2009, resulted in an inability to locate and contact most of the witnesses who were at the party. Ramsey asserts that he made the necessary threshold showing that he needed the investigator and that the district court abused its discretion in denying the motion at that time. On October 29, two months before trial, the district court reconsidered Ramsey's motion for an order authorizing employment of an investigator and granted Ramsey $750 to do so. Even assuming the district court erred by denying Ramsey's motion on October 14, the error is harmless and not reversible if the reviewing court is convinced beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *See State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010). Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005).

As noted above, while the district court initially denied Ramsey's motion, fifteen days later the district court granted Ramsey's motion and authorized the expenditure of $750. Ramsey does not assert that the fifteen-day delay resulted in the inability to locate and contact most of the witnesses who were at the party. Thus, we are convinced beyond a reasonable doubt

that, even if the district court erred by not granting Ramsey's motion for employment of an investigator at public expense initially, such error did not contribute to the verdict obtained against Ramsey.

### 4.    Motion for psychiatrist

Ramsey argues that the district court erred by denying his motion for an order authorizing employment of a psychiatrist at public expense. In support of this argument, Ramsey asserts that he was denied a fair trial because, by the charges in the information filed against him, the jury got the impression that Ramsey was a sexual predator and, therefore, a psychiatrist was needed to rebut this impression.

A defendant seeking assistance at state expense must make a threshold showing that the assistance has probable value to address what will be a significant factor at trial, such that the accuracy of the jury's determination would be called into question if the assistance were denied. *State v. Martin*, 146 Idaho 357, 363, 195 P.3d 716, 722 (Ct. App. 2008). The decision whether to authorize public funds to provide expert assistance for a defendant is left to the sound discretion of the trial court. *Id.* at 362, 195 P.3d at 721. Again, when a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *Hedger*, 115 Idaho at 600, 768 P.2d at 1333.

Here, in denying Ramsey's motion for an order authorizing employment of a psychiatrist at public expense, the district court noted that it perceived the issue as one of discretion. The district court also identified the legal standard applicable to the issue and explained that it would authorize the expenditure of public funds only if Ramsey made a threshold showing that the assistance of a psychiatrist had probable value to address a significant factor at trial. The district court explained that it could not find anything in the record to support Ramsey's assertion that the state alleged he was a sexual predator. The district court also determined that the elements of the offenses for which Ramsey was charged did not require that the state prove that Ramsey was a sexual predator. The district court also determined that an opinion by a psychiatrist that Ramsey was not a sexual predator was not a defense to the crimes Ramsey was charged with committing. Thus, the district court concluded that Ramsey had not made the requisite threshold

8

showing that the opinion of a psychiatrist regarding whether Ramsey was a sexual predator had probable value to address a significant factor at trial. We conclude that the district court did not abuse its discretion by denying Ramsey's motion for an order authorizing employment of a psychiatrist at public expense.

### 5. Motion to inspect premises

Ramsey filed a motion, pursuant to I.C.R. 16, to inspect the premises where the alleged offenses occurred and the district court denied Ramsey's motion. On appeal, Ramsey argues that the district court improperly applied the ruling in *State v. Babb*, 125 Idaho 934, 877 P.2d 905 (1994) in denying his motion. In that case, Babb was charged with murdering Boone in Boone's house. Following the state's investigation into Boone's death, the state surrendered possession and control of Boone's residence to Boone's father. When Babb moved for an order allowing inspection of the premises, the trial court determined that it did not have the power to order such inspection unless Babb demonstrated that those premises were in the possession or control of the prosecutor. Babb did not follow up on the trial court's invitation to request an order to show cause bringing Boone's father, who was in possession of the residence, into court and requiring Boone's father to show cause why he should not be compelled to allow the defense to inspect the residence.

In affirming the trial court's decision on appeal, the Idaho Supreme Court did not read I.C.R. 16 to authorize the trial court to order the prosecuting attorney to allow an inspection of real property in the possession or control of someone other than the prosecution when that person had not been brought before the trial court. *Babb*, 125 Idaho at 939, 877 P.2d at 910. The Court determined that, because Babb sought an order allowing inspection of Boone's residence, it was critical that Babb bring Boone's father before the trial court, giving Boone's father notice and an opportunity to respond, before the trial court issued an order compelling action by Boone's father. *Id*. at 940, 877 P.2d at 911. The Court concluded that Babb had missed the significance of the trial court's invitation for Babb to request an order to show cause. *Id.* at 939-40, 877 P.2d at 910-11.

Ramsey argues that, unlike *Babb*, where the state had finished its investigation of the crime scene and turned possession and control of the property over to the father of the murdered victim, here the alleged victim, SP, was in control of the premises Ramsey's counsel sought to inspect and the state had not completed its investigation of the crime scene. Also, unlike the

9

father of the victim in *Babb*, Ramsey asserts that SP, as the alleged victim and prosecuting witness in this case, was before the district court.[4]

In the district court's order denying Ramsey's motion to inspect, the district court noted that the scene of the alleged offenses was SP's home. The district court also determined, at the hearing on the motion, the state represented that, while SP was willing to allow investigating police officers to take pictures and measurements of her home if the parties so desired, she was not willing to permit Ramsey's counsel to have entry and access. The district court further determined that Ramsey's counsel did not accept that offer. The district court concluded that determination of the motion was a matter of law and that, pursuant to *Babb*, the district court lacked authority to order the prosecuting attorney to allow inspection of real property in the possession or control of someone other than the prosecution when that person had not been brought before the district court. Thus, the district court denied Ramsey's motion.

Even assuming that the district court incorrectly applied *Babb* to this case, error is harmless and not reversible if the reviewing court is convinced beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Perry*, 150 Idaho at 221, 245 P.3d at 973. Thus, we examine whether the alleged error complained of in the present case was harmless. *See Lopez*, 141 Idaho at 578, 114 P.3d at 136.

While Ramsey's counsel did not accept SP's offer prior to trial to allow police to take pictures and measurements of her home, the record shows that Ramsey's counsel accepted that offer at a later time. Specifically, on the second day of trial, the state explained:

> [Ramsey's counsel] and I met for a few minutes and are going to stipulate to the admission of a significant number of photographs and a few diagrams, and I'm counting those up now. I think this will help us be much more efficient in presenting testimony from both sides.
>
> And by way of description, these are photographs of [SP's] home, both the exterior and interior, along with photographs of the outside, the outside area, the outbuildings, the grounds, so to speak, along with some diagrams of the home and property that were prepared by one of our officers at [Ramsey's counsel's] request.

---

[4] This case is only distinguishable from *Babb* because the victim here (not a relative of the victim) was in control of the premises. Ramsey argues that a victim should be considered a party to the case and, thus, subject to the court's jurisdiction because victims have certain rights not afforded to others. We know of no authority holding that the court has jurisdiction to order a crime victim, solely because of his or her status as a victim, to allow inspection of his or her property by defense counsel.

10

The trial transcript shows that these photographs and diagrams were utilized by the state and Ramsey's counsel during examination and cross-examination of witnesses during trial. Ramsey, on appeal, asserts:

> To this moment, neither Tyrell Ramsey, nor counsel for Ramsey can be certain of the accuracy of the exhibits prepared by the State. We were, in effect, forced to accept without question, the exhibits prepared by the State and to prepare a defense based upon them. We have no way to this date to know if some factual condition, that may have assisted [Ramsey] in his defense existed at the location. Counsel for Ramsey was denied the opportunity to make certain observations, formulate the perceptions of facts and conditions with a view of the defense contentions in mind.
>
> It was error for the Court to deny the Motion to Inspect. Although certain photographs, measurement and diagrams were furnished, the error was not harmless error. Counsel for Ramsey was not only delayed in trial preparations, but because he was denied inspection the subtle perceptions and conclusions resulting from actually viewing the alleged crime scene were not available to the defense. Defense counsel may well have observed something the officer did not, given the fact that the inspecting officers had a distinctly prosecution bias by nature.

Ramsey's counsel heavily relied upon the photographs, diagrams, and measurements of SP's home and surrounding premises during trial. However, Ramsey's counsel did not argue before the district court that such evidence failed to disclose any factual condition that may have assisted Ramsey in his defense or articulate that he was delayed in trial preparations because he was denied the opportunity to personally inspect the premises. Thus, because Ramsey's counsel stipulated to the admission of the photographs, diagrams, and measurements of SP's home and surrounding premises and utilized such evidence heavily during trial without raising any objection, we are convinced beyond a reasonable doubt that, even if the district court erroneously denied Ramsey's motion to inspect, such error did not contribute to the verdict obtained against Ramsey and was, therefore, harmless.

### 6.     Evidence of SP's prior sexual behavior

Ramsey argues that, by denying his request to allow presentation of evidence related to SP's alleged sexual habit, the district court denied Ramsey a fair trial because, upon considering such evidence, the jury would have returned a different verdict. The district court has broad discretion in the admission and exclusion of evidence, and its decision to admit such evidence

11

will be reversed only when there has been a clear abuse of that discretion. *State v. Perry*, 139 Idaho 520, 521, 81 P.3d 1230, 1231 (2003).

Here, the state filed a motion in limine to obtain a pretrial ruling on the admissibility of SP's prior sexual behavior pursuant to I.R.E. 412. At a hearing on the motion on December 22, 2009, the state explained that SP reported being approached by ex-boyfriends or friends who expressed concern about being called to testify because they had been contacted and asked detailed questions about their prior possible sexual relations with SP. The state asserted a concern that Ramsey's counsel would attempt to raise the issue of prior sexual behavior of SP with these potential witnesses during trial without complying with the notice requirements of I.R.E. 412 because counsel previously indicated an intention to pursue some sort of defense related to the past sexual behavior of SP. Ramsey's counsel admitted that he considered trying to offer evidence of past sexual conduct, but changed his mind about doing so and, therefore, did not give the required notice. Ramsey's counsel then stated:

> There are some aspects of their past conduct that may deal with a form of habit, the habit of one of these alleged victims that I don't intend to bring up myself, but it could develop in the evidence. I have no intention of myself going into it. And [SP], I understand, has kind of a reputation for certain types of sexual conduct that I had considered bringing up, but I am not going to do that. That's not my intention, and that's the reason I have avoided it. So I guess the essence of my statement is that I am confessing his motion.

The district court responded by explaining that the rape shield statute, I.C. § 18-6105, would be "thoroughly and assiduously" applied, as well as I.R.E. 412, if such issues came up at trial.

On December 23, Ramsey filed an offer of proof and notice of intent to offer evidence of habit pursuant to I.R.E. 406. Specifically, Ramsey asserted that he would offer proof that SP routinely dropped her pants when she desired to have sex with an individual through testimony of one witness who allegedly had sex with SP on a prior occasion. Ramsey also asserted that such information was recently discovered through communication with the witness and was relevant to corroborate what Ramsey claimed occurred when SP allegedly invited him to have sex with her at the party.

At a hearing on the issue, the state asserted that Ramsey's counsel indicated at the December 22 hearing that he had decided not to pursue any such evidence and that this was the

12

type of evidence that the rape shield statute and I.R.E. 412 were designed to prevent. In response, Ramsey's counsel stated:

> Well, first of all when we were in court the other day I was talking about character evidence. And I think that you will find that in my statement I specifically said there was some evidence concerning her conduct that we might try to offer. This was part of that information that I was alluding to. I did not say I would not try to offer evidence of habit or of evidence that--what I said was that I would not--I was not going to offer any evidence of character.
>
> This I do not consider to be evidence of character. This evidence is important and corroborative of Mr. Ramsey's claim, and it definitely establishes and it goes to the issue of her consent to whatever occurred back there.

The district court determined that the rape shield statute and I.R.E. 412 applied to govern the evidence Ramsey sought to offer related to SP's prior sexual behavior. While Ramsey attempted to characterize the evidence as evidence of habit not covered by I.R.E 412, the district court rejected that characterization. Thereafter, the district court concluded that, pursuant to I.R.E. 412, such evidence was inadmissible. Specifically, the district court explained:

> The rule states very specifically at rule 412(b) as follows: Evidence of a victim's past sexual behavior is not admissible unless, Number one: It is admitted in accordance with sub provisions (c)(1) and (c)(2) and is constitutionally required to be admitted.
>
> No showing in the motion that this exception is met.
>
> The second exception is that past sexual behavior may be admitted in accordance with sub provision (c) of rule 412 and is evidence of a very limited list of relevant topics. The first of those is whether or not the issue before the court is whether this defendant is the source of semen or injury. That's not a basis for this offer.
>
> The second exception is past sexual behavior with this defendant. That's not the basis of this offer.
>
> The next exception is: Pertains to false allegations of sex crimes made at an earlier time. That's not the basis for this offer.
>
> The last is: Sexual behavior with parties other than the accused which occurred at the time of the event giving rise to the crime charged. That's not the basis of this offer.
>
> For those reasons and testimony by [the potential witness] would not be permitted.
> . . . .
> Second, I'm not sure you've met the threshold requirement showing to me that this was newly discovered and that it could not have been obtained earlier through the exercise of due diligence.
>
> But, putting that aside, [counsel], I don't know how to make it any clearer that there will be no comments from the beginning of jury selection, through the

questioning of witnesses, and in argument to the jury, that in any way goes to either of these complaining witnesses past sexual behaviors. Is that clear?

Ramsey argues that the district court erred by rejecting Ramsey's characterization of the evidence he sought to introduce as evidence of habit not covered by I.R.E. 412. Specifically, Ramsey asserts that he had a constitutional right to present evidence of SP's prior sexual behavior because such evidence showed a pattern of behavior clearly similar to Ramsey's account of her actions at the time of the alleged offense.

Indeed, in *State v. Peite*, 122 Idaho 809, 815, 839 P.2d 1223, 1229 (Ct. App. 1992), this Court explained that a defendant may have a constitutional right to present evidence of a complainant's prior sexual behavior where such evidence shows a pattern of behavior that is clearly similar to the defendant's account of the complainant's actions at the time of the alleged offense. However, in this case, Ramsey sought to offer evidence of SP's prior sexual behavior during one encounter with one man through testimony of that individual. Such testimony does not show a pattern of behavior such that evidence of SP's prior sexual behavior was constitutionally required to be admitted. Thus, the district court did not err by rejecting Ramsey's characterization of the evidence he sought to offer as evidence of habit not covered by I.R.E. 412. Accordingly, the district court did not err by denying Ramsey's request to allow the presentation of such evidence at trial.

## B.    Jury Selection

Ramsey argues that he was denied a fair trial by the jury selection process employed by the district court in this case. Following selection of the jury, but outside its presence, the following exchange took place between Ramsey's counsel and the district court:

> [COURT]    Very well. Are there any other preliminary matters you wish to take up before the jury comes in?
>
> [COUNSEL]  There is one thing, Your Honor, I'd like to ask the court. Because of the method by which the jury was selected that was strange to my old practice, I would like to know what rule or provision of law you rely on in not calling the 12 initial jurors. I just need to understand a little more about it. You know, you've explained quite a bit to me, but I am not familiar with this practice. So--
>
> [COURT]    Well, as I indicated before, first of all once the jury commissioner receives the questionnaires and ascertains a pool of qualified jurors, a computer software program then randomly assigns the qualified jurors a number for their juror number. And then when it comes time to pick a panel of jurors the computer program picks, say 100, as we had in this case, and randomly assigns

14

those 100 jurors for the second random mix into the assigned seats. And so I believe that that fulfills the requirement that the selection process be random and that's the method that we rely upon. I'm told it's the same method that they use in Twin Falls County, and I know it's the same method they use in Ada County because I've tried some jury trials up there a year or two ago using that same procedure.

[COUNSEL] The question I have is, in my view it's not possible to tell-- or it may not be impossible--but difficult to tell who will be on the jury by this method, and that's the reason for my inquiry.

[COURT] I hope my answer has provided some insight.

This exchange indicates that, while Ramsey's counsel had concerns regarding the district court's method for selecting the jury in this case, Ramsey did not object to such method or claim that it denied him of a fair trial. Ramsey does not argue that by using such method, the district court committed fundamental error. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Also, there is no indication in the record that the jury selection process employed by the district court in this case did not comply with the relevant statutes and rules. Accordingly, we will not consider Ramsey's claim that that he was denied a fair trial by the jury selection process employed by the district court in this case.

## C.     Trial Rulings

### 1.     Video interview

Ramsey argues that, pursuant to *State v. Bingham*, 124 Idaho 698, 864 P.2d 144 (1993), the district court erred by admitting an edited version of a video interview conducted by police after Ramsey was arrested because the video either lacked or contained statements that rendered the video highly prejudicial to Ramsey. Specifically, Ramsey asserts that, because the edited version of the interview did not contain his statement explaining why he would not have done what SP claimed, the removal of that statement was highly prejudicial. Ramsey also argues that the edited video contained inadmissible and prejudicial remarks made by the investigating officer that should have been excluded. Again, the district court has broad discretion in the admission and exclusion of evidence, and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion. *Perry*, 139 Idaho at 521, 81 P.3d at 1231.

The omitted statement in the edited version of the video interview that Ramsey refers to pertains to SP's prior sexual behavior with others. While Ramsey's counsel argues that the

15

omitted statement served to explain the reasons why Ramsey would not have done what SP alleged and had nothing to do with proving SP's prior sexual behavior, the district court found that the evidence fell squarely within I.R.E. 412 and concluded that such evidence was inadmissible. We agree with the district court's determination that I.R.E. 412 governed the admissibility of the statement that Ramsey wanted to include in the video interview pertaining to SP's prior sexual behavior. Further, Ramsey does not argue that such evidence falls within any exception outlined by I.R.E. 412(b). Therefore, the district court did not err by denying Ramsey's request to allow the presentation of such evidence.

Ramsey also argues that the edited video interview should have been excluded because it contained inadmissible and prejudicial statements made by the investigating officer. Specifically, Ramsey points to the officer's statements indicating that, based on the stories he heard from LN and SP, he found Ramsey's story difficult to believe. Ramsey asserts that the statements were inadmissible and cites to a portion of the trial transcript that contains a discussion between the state and the district court related to the idea that some of the statements made by the officer were potentially hearsay. The state asserted that it was not offering the statements to prove the truth of the matter asserted, but suggested that the district court offer a limiting instruction that the officer's statements in the interview were not admissible to prove anything the officer asserted. Upon this suggestion by the state, after the edited video interview was played to the jury, the district court instructed the jury that any statements made by the officer during the course of the interview were not to be considered as evidence and that the evidence in the video consisted solely of Ramsey's statements. While Ramsey asserts that this instruction could not erase from the mind of the jurors the officer's view of Ramsey's testimony, we presume a jury follows the instructions given by the district court. *Hedger*, 115 Idaho at 601, 768 P.2d at 1334; *Rolfe*, 92 Idaho at 471, 444 P.2d at 432; *Boothe*, 103 Idaho at 192, 646 P.2d at 434. Thus, Ramsey has failed to show that the officer's statements were inadmissible or that he suffered prejudice due to the inclusion of such statements such that the district court abused its discretion by denying Ramsey's request to exclude the edited version of the video interview at trial.

### 2.     Evidence of prior relationship

Ramsey argues that the district court erred by improperly excluding relevant evidence of the prior relationship between SP and Ramsey. Specifically, Ramsey asserts that the evidence of

16

the prior relationship between Ramsey and SP was relevant because it demonstrated who made the first approach, corroborated his claim that SP invited him to meet her on the porch at the party, and was relevant for the impeachment of SP's testimony where she denied any significant acquaintance with Ramsey prior to the evening in question.

We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). Pursuant to I.R.E. 401, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

On direct examination, Ramsey's counsel inquired of Ramsey whether, during previous encounters, SP suggested having a relationship with him. Ramsey responded in the affirmative. The state objected to such questioning based on relevance. The district court sustained the objection and instructed the jury to disregard the question and answer. Ramsey's counsel continued the inquiry and asked Ramsey whether SP ever asked Ramsey to date her. The state again objected and the district court sustained the objection.

The jury had to determine whether Ramsey was guilty of attempted rape, battery with intent to commit rape, and sexual penetration with a foreign object upon SP on the evening in question. Ramsey does not explain how who made the first approach is relevant to this determination. Further, whether Ramsey met SP on the porch by invitation is not relevant to whether Ramsey subsequently tried to force himself upon her sexually and against her will. Finally, Ramsey refers to a specific portion of the trial transcript in support of his argument that evidence of the prior relationship between Ramsey and SP was relevant for the impeachment of SP's testimony where she denied any significant acquaintance with Ramsey prior to the evening in question. SP testified that Ramsey had been to her house on one prior occasion and she had met with him at a friend's house on other prior occasions. By such testimony, SP did not deny any significant acquaintance with Ramsey such that evidence of the prior relationship between Ramsey and SP was relevant for the purpose of impeachment. Thus, Ramsey has failed to show that the district court erred by excluding evidence of the prior relationship between SP and Ramsey.

## D.     Jury Instruction

Ramsey argues that the district court erred by giving the jury the instruction to continue to deliberate after the jury asked "What happens if we do not have a unanimous decision on

17

Instruction 28?" Instruction 28 informed the jury what the state was required to prove in order for the jury to find Ramsey guilty of the offense of battery with intent to commit rape upon SP. Ramsey asserts that the district court should have opened a dialogue with the jury to determine whether they were deadlocked and to explain what would happen if they did not reach a unanimous verdict. By not doing so, Ramsey argues that the district court's instruction had the effect of putting undue pressure on the minority jurors and, therefore, denying Ramsey's right to a fair trial. While Ramsey acknowledges that he did not raise this claim of error to the district court, Ramsey asserts that this Court should review his claim pursuant to *Perry*, 150 Idaho 209, 245 P.3d 961, because, by giving the instruction, the district court committed fundamental error. In *Perry*, the Idaho Supreme Court explained that, if there was no contemporaneous objection made below, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) affected the defendant's substantial rights, meaning in most instances, that if affected the outcome of the trial proceedings. *Id*. at 226, 245 P.3d at 978.

Even assuming that Ramsey's unwaived constitutional right to a fair trial was violated when the district court gave the jury the instruction to continue to deliberate, pursuant to *Perry*, Ramsey must show that the error is clear or obvious without the need for reference to any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision. When the district court informed the state and Ramsey's counsel of the jury's question regarding Instruction 28, the district court inquired whether either had a proposal regarding a response to the question. Ramsey's counsel indicated that the jury's question indicated to him that the jury was not accepting SP's version of the case unanimously. Ramsey's counsel also indicated that he believed the jury might be deadlocked. In response, the district court stated:

> And I certainly share your concerns, and I understand the direction that you're thinking, and I entertained also the notion that this might be a declaration of deadlock. I think that, if so, Instruction 34 says that he must be acquitted, but--if the unanimous verdict is that he's not guilty, and the jury may be indicating they cannot reach a unanimous verdict either way.
>
> Given the uncertainty as to the actual intent or just to the question without trying to read more into it than we really should, I think at this point we know the

18

jury appears to be struggling on a particular instruction, Number 28. My sense is that it's premature to get too far afield on assumptions and further questions, and I don't want to open a dialogue with the jury at this point unless and until they more unequivocally declare deadlock. And if that happens, Counsel, what I'll do is bring the jurors in and question each of them individually as to whether they believe deadlock has been reached or not. And I think we'll just have to wait to see whether we cross that bridge or whether that's even necessary.

At this point it would be my intent to simply answer the question as follows: The jury is to continue its deliberations under the direction of the instructions that have been given. I don't think that that instruction goes too far afield, and I don't think it pressures the jury at this point to make a decision that the jury has clearly indicated--Let me rephrase that. The jury has not yet clearly indicated to me that it is deadlocked and so, therefore, I think that the answer back doesn't unduly pressure the jury to continue beyond all reasonable expectations.

After inquiring whether the state or Ramsey's counsel objected to the proposed answer, and hearing no objection, the district court gave the jury the instruction to continue to deliberate. Accordingly, it is not clear or obvious from the record whether Ramsey's counsel made a tactical decision to not object to the instruction. Thus, Ramsey's claim that the district court committed fundamental error by giving the instruction to the jury fails under the second prong of *Perry* and we will not further consider this claim.

**E.     Jury Verdict**

Ramsey argues that the jury verdict in this case was not supported by substantial and competent evidence. Appellate review of a challenge to the sufficiency of the evidence is limited. A jury verdict will not be set aside if it is supported by substantial and competent evidence upon which a rational trier of fact could find all elements of the crime beyond a reasonable doubt. *State v. Thomas*, 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct. App. 1999); *State v. Haley*, 129 Idaho 333, 334, 924 P.2d 234, 235 (Ct. App. 1996). We may not substitute our opinion for that of the jury as to the credibility of witnesses or the weight to be given to their testimony. *State v. Gonzalez*, 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct. App. 2000). The facts, and inferences to be drawn from those facts, are construed in favor of upholding the jury's verdict. *Peite*, 122 Idaho at 823, 839 P.2d at 1237.

Ramsey submits that a complete review of the evidence in this matter will prove that the state's evidence is unreliable and does not rise to the level of proof beyond a reasonable doubt. However, Ramsey acknowledges that, in the final analysis of this case, the jury was required to decide which of the parties they were to believe--LN, SP, or Ramsey. As noted above, both LN

and SP testified. LN testified that after she went into the bathroom during the party, Ramsey pushed himself into the bathroom and tried to force himself upon her sexually and against her will. SP testified that she was outside on a porch during the party when Ramsey approached her and pulled her behind the house and tried to force himself upon her sexually and against her will. Ramsey denied that he had committed the acts. Evidence relating to the credibility of all witnesses was submitted. In finding Ramsey guilty of the included offense of misdemeanor battery upon LN, battery with intent to commit rape upon SP and sexual penetration with a foreign object upon SP, the jury determined that Ramsey's testimony lacked credibility. Additionally, reviewing the trial transcript and record, we conclude that there was ample evidence presented from which a rational trier of fact could find all elements of such crimes beyond a reasonable doubt. Thus, we will not set aside the jury verdict.

## F.     Cumulative Error

Ramsey argues that, pursuant to the cumulative error doctrine, this Court should vacate his judgment of conviction. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* As explained above, we determined that, even assuming the district court erred by initially denying Ramsey's motion for an order authorizing employment of an investigator at public expense and denying Ramsey's motion to inspect SP's home and the surrounding premises, such errors were harmless because we are convinced beyond a reasonable doubt that such errors did not contribute to the jury verdict. We further conclude that, even if such harmless errors occurred, when aggregated, they do not show the absence of a fair trial in contravention of Ramsey's right to due process. Thus, we will not vacate Ramsey's judgment of conviction pursuant to the cumulative error doctrine.

## III.

## CONCLUSION

Ramsey has not shown that the district court erred by setting his $100,000 bond or denying his motion for reconsideration. The district court did not err by denying Ramsey's motion to sever charges regarding LN from charges regarding SP for trial. Even assuming the

20

district court erred by initially denying Ramsey's motion for an order authorizing employment of an investigator at public expense, such error was harmless. Ramsey has also not shown that the district court erred by denying his motion for an order authorizing employment of a psychiatrist at public expense. Even assuming that the district court incorrectly applied *Babb* to this case in denying Ramsey's motion to inspect premises, such error was harmless. The district court did not err by excluding evidence of SP's prior sexual behavior from trial. Because Ramsey raised the issue for the first time on appeal, we will not consider his claim that he was denied a fair trial by the jury selection process employed in this case. Ramsey has not shown that the district court erred by allowing the edited version of Ramsey's video interview to be played to the jury. The district court did not err by excluding evidence of the prior relationship between SP and Ramsey at trial. Ramsey's claim that the district court committed fundamental error by giving the jury instruction to continue deliberations after the jury submitted a question regarding Instruction 28 fails under the second prong of *Perry*. We will not set aside the jury verdict because there was ample evidence presented from which a rational trier of fact could find all elements of the crimes that the jury found Ramsey guilty of beyond a reasonable doubt. Finally, we will not vacate Ramsey's judgment of conviction pursuant to the cumulative error doctrine. Thus, Ramsey's judgment of conviction for battery with intent to commit rape, sexual penetration with a foreign object, and misdemeanor battery is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ, **CONCUR.**